

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN, TEXAS 78711

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

April 28, 1969

Senator Jack Strong
Chairman
Senate Committee on
  Privileges and Elections
Capitol Building
Austin, Texas

Dear Senator Strong:

Opinion No. M-384

Re: Constitutionality of S.B.
No. 107 relating to the
election of presidential
electors and amending
sections under the Election
Code.

You have requested our opinion concerning the constitutionality of Senate Bill No. 107. The caption to the bill provides that it is An Act

"relating to the election of presidential electors from congressional districts and from the state at large, and binding all presidential electors to vote according to the plurality which elected them; amending the Texas Election Code as follows: amending section 170a, as amended (Article 11.01a, Vernon's Texas Election Code); adding section 171a; amending section 172 (Article 11.03); amending section 173, as amended (Article 11.04); amending section 174 (Article 11.05); and declaring an emergency."

For brevity's sake, we will summarize the sections.

Section 1: Amends section 170a of Texas Election Code by adding section 3, which states that a political party's presidential electors shall be nominated for each congressional district and as many electors at large as there are Senators and Congressmen at large.

Section 2: Adds section 171a to Texas Election Code which states that the presidential elector candidates who receive the plurality of votes in each district or at large shall represent that district or the state at large at the state meeting of presidential electors.

- 1897 -

Section 3:  Amends Section 172, Texas Election Code, to state that the canvass  of the votes for candidates for President and Vice-President and their returns shall be the same as those for the candidates for district and at large electors of the same party, rather than for the same party generally.

Section 4:  Amends Section 173 to include district and at large presidential electors in the certification of candidates, rather than electors in general.

Section 5:  Amends Section 174 of Texas Election Code to state that district and at-large presidential electors shall cast their votes in accordance with the plurality vote for President and Vice-President in the district and state at large, respectively, which they represent and no other way.  Also, this section provides the means by which a person is appointed to replace an elected presidential elector who by death, disabling cause, or disqualification is unable to attend the meeting of electors.  Further, it states that any person so appointed must vote for the same candidate as the person he is substituting for was bound to vote for.

Article II, Section 1, United States Constitution, provides as follows:

"Each State shall appoint, in such manner as the Legislature thereof may direct, a number of Electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress; but no Senator or Representative or person holding an office of trust or profit under the United States, shall be appointed an Elector."

Congress is empowered to determine the time of choosing the electors and the day on which they are to give their votes, which is required on the same day throughout the United States.  Otherwise, the power and jurisdiction of the state is exclusive, with the exception of the provisions as to the number of electors and the ineligibility of certain persons.  McPherson v. Blacker, 146 U.S. 1 (1892).  The Supreme Court stated at page 27 of that opinion:

"The State also acts individually through its electoral college, although by reason of

the power of its legislature over the manner
of appointment, the vote of its electors may
be divided.

"The Constitution does not provide that
the appointment of electors shall be by popular
vote, nor that the electors shall be voted for
upon a general ticket, nor that the majority of
those who exercise the elective franchise can
alone choose the electors.  It recognizes that
the people act through their representatives in
the legislature, and leaves it to the legisla-
ture exclusively to define the method of effect-
ing the object."

States have considerable freedom in the selection of
presidential electors.  Gray v. State of Mississippi, 233 F.Supp.
139 (N.D. Miss. 1964).  Congress may not interfere with the
method designated by the State Legislature for appointment of
presidential electors.  Commonwealth ex rel Dummit v. O'Connell,
298 Ky. 44, 181 S.W.2d 691 (1944).  Williams v. Rhodes, 89 S.Ct.
5 (1968).  The Constitution leaves it to the state legislature
exclusively to define the method of effecting the vote of elect-
ors.  Cf. McPherson  v. Blacker, 146 U.S. 1, 27 (1892); In re
Green, 134 U.S. 377 (1890).

The question under consideration was discussed by the
Supreme Court of the United States in Ray v. Blair, 343 U.S.
214 (1952).  The Supreme Court held as follows:

"The applicable constitutional provisions
on their face furnish no definite answer to the
query whether a state may permit a party to re-
quire party regularity from its primary candidates
for national electors.  The presidential electors
exercise a federal function in balloting for
President and Vice-President but they are not
federal officers or agents any more than the
state elector who votes for congressmen.  They
act by authority of the state that in turn re-
ceives its authority from the Federal Constitu-
tion.  Neither the language of Art. II, §1, nor
that of the Twelfth Amendment forbids a party
to require from candidates in its primary a
pledge of political conformity with the aims
of the party.  Unless such a requirement is im-
plicit, certainly neither provision of the

Constitution requires a state political
party, affiliated with a national party
through acceptance of the national call
to send state delegates to the national
convention, to accept persons as candidates
who refuse to agree to abide by the party's
requirement. (343 U.S. 224)

"
. . .

". . .A state's or a political party's
exclusion of candidates from a party primary
because they will not pledge to support the
party's nominees is a method of securing
party candidates in the general election,
pledged to the philosophy and leadership
of that party. It is an exercise of the
state's right to appoint electors in such
manner, subject to possible constitutional
limitations, as it may choose. . . . (343
U.S. 227)

"
. . .

"We conclude that the Twelfth Amend-
ment does not bar a political party from
requiring the pledge to support the nominees
of the National Convention. Where a state
authorizes a party to choose its nominees
for elector in a party primary and to fix
the qualifications for the candidates, we
see no federal constitutional objection to
the requirement of this pledge. (343 U.S. 231)

". . ."

Although the Alabama Supreme Court had earlier ruled
unconstitutional a state statute providing that the electors
shall cast their ballot for the nominee of the National Conven-
tion of the party by which they were elected (Opinion of The
Justices, 34 So.2d 598 (1948)), it is doubted whether the
Supreme Court would so hold in view of its 1952 decision in
Ray v. Blair, supra.

Other state cases supporting the constitutionality
of the proposed legislation in question here are Thomas v.
Cohen, 262 N.Y.S. 320 (1933); Markham v. Bennion, 252 P.2d
539 (1953); Sprechels v. Graham, 194 Cal. 516, 228 P. 1040
(1923).

The Texas Constitution contains no provision relative to presidential electors and in our opinion, if the Legislature enacts Senate Bill No. 107 into law, it will be constitutional.

### S U M M A R Y

Senate Bill No. 107 is not unconstitutional in providing for the election of presidential electors by congressional districts as well as from the state at large, and in providing that such electors must cast their ballots in accordance with the plurality vote within such congressional districts or the state at large, as the case may be.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Jack Sparks
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Malcolm Quick
Roy Mouer
Robert Darden
Sally Phillips

W. V. GEPPERT
Staff Legal Assistant

HAWTHORNE PHILLIPS
Executive Assistant